# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROBERT S. WATSON, )
)
        Plaintiff, ) 2: 12-cv-00628
  v. )
)
VULCRAFT SALES CORPORATION, )
)
        Defendant. )

**MEMORANDUM OPINION AND ORDER OF COURT**

Presently pending before the Court is a MOTION TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6), with brief in support, filed by Defendant, Vulcraft Sales Corporation ("Vulcraft") (*Document Nos. 4 and 5, respectively*), and the BRIEF IN OPPOSITION filed by Plaintiff, Richard Watson ("Watson") (*Document No. 6*). The Motion is now fully briefed and ripe for disposition.

**Factual Background**

As the law requires, at this stage of the proceeding all disputed facts and inferences are to be resolved in favor of Plaintiff, the non-moving party. The following background is drawn from the Complaint and the factual allegations therein are accepted as true for the purpose of this opinion.

The claims asserted arise from the termination of Plaintiff's employment with Vulcraft, after he failed a drug test administered by his employer. Watson was employed with Vulcraft from December 2008 through April 5, 2010 and held a full-time position in computer drafting as an assistant detailing supervisor, earning $21.50 per hour. Watson admits that while employed, he was "never provided with an Employee Handbook and was never provided with a written drug testing policy." Complaint*,* at ¶ 5. Watson did, however, sign a "Division Policies" form,

1

dated February 12, 2010, which states "I have read, or have had the Vulcraft of New York, Inc. Division Policies read to me, and fully understand the Vulcraft policies checked below," which included a "Drug and Alcohol Policy." *Id.,* Exhibit C. The form further read: "I also understand that if I violate the provisions and regulations of these policies, my employment with Vulcraft of New York, Inc. may be subject to termination." *Id.*

Although he never received a written handbook or written drug testing policy, Watson claims that Vulcraft had a "custom" of administering a second test "if any drug test came back positive or otherwise not negative." *Id.* at ¶ 6. Plaintiff further asserts that his understanding of the unwritten drug policy was that termination of employment would only occur "if those individuals were found to have unlawful substances in their systems." *Id.* at ¶ 7.

On or around April 5, 2010, Vulcraft notified Watson that he had tested positive for an amphetamine after undergoing a drug test, and subsequently terminated his employment without administering a second test. According to Plaintiff, he had been taking the medication Adderall for his Attention Deficit Hyperactivity Disorder ("ADHD"), and had explained to Vulcraft that the positive results "must have been from the amphetamine [Adderall], which is a lawful substance." *Id.* at ¶ 9. Watson's local supervisor informed him that he was "advised to terminate Watson on direction from headquarters" and "was sorry that the Plaintiff's employment was terminated." *Id.* at ¶ 11.

The Complaint asserts that when Vulcraft terminated Plaintiff's employment, it breached an alleged employment contract and therefore deprived Watson of a job with substantial income. Watson makes no reference within his Complaint to a contract between the parties with regard to his employment, but instead alleges that he "received positive reviews and fully anticipated being with [Vulcraft] on a long term basis." *Id.* at ¶ 13.

2

## Procedural Background

Watson initiated this litigation on February 22, 2012, by filing a Complaint in the Court of Common Pleas of Allegheny County, Pennsylvania, in which he alleged a breach of employment contract. The Complaint, however, was not served on Vulcraft. Subsequently, the Complaint was reinstated with the court on April 3, 2012 and served on by Vulcraft on April 20, 2012.

On May 10, 2012, Vulcraft removed the lawsuit from Allegheny County to this Court. On May 17, 2012, Vulcraft filed a Motion to Dismiss the Complaint, in which it argues that Watson failed to state a claim upon which relief could be granted, as the Complaint fails to show the existence of a contract which would alter Watson's status as an employee at will.

Watson responds that the Complaint is sufficient with respect to the legal standard because the concept of "Employment at Will" creates a rebuttable presumption under the law. Watson further asserts that his termination violated public policy because the positive results of his drug test were due to his ADHD medication, Adderall, a legal substance.

## Standard of Review

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) challenges the legal sufficiently of the complaint filed by plaintiff. The United States Supreme Court has held that "[a] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (*citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (alterations in original).

The Court must accept as true all well-pleaded facts and allegations, and must draw all reasonable inferences therefrom in favor of the plaintiff. However, as the Supreme Court made clear in *Twombly*, the "factual allegations must be enough to raise a right to relief above the speculative level." *Id.* The United States Supreme Court has subsequently broadened the scope of this requirement, stating that only a complaint that states a plausible claim for relief survives a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Thus, after *Iqbal,* a district court must conduct a two-part analysis when presented with a motion to dismiss for failure to state a claim. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the Court must separate the factual and legal elements of the claim. *Id.* Although the Court "must accept all of the complaint's well-pleaded facts as true, [it] may disregard any legal conclusions." *Id*. at 210-11. Second, the Court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Id*. at 211 (*citing Iqbal* 129 S. Ct. at 1949). The determination for "plausibility" will be "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id*. at 211 (*quoting Iqbal* 129 S. Ct. at 1950).

As a result, "pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss." *Id*. at 211. That is, "all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible. This then 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id*. at 210 (*quoting Iqbal,* 129 S. Ct. at 1948).

However, nothing in *Twombly* or *Iqbal* changed the other pleading standards for a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and the requirements of Fed. R. Civ. P. 8 must still be met. *See Phillips v. Co. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (internal citations omitted). Fed. R. Civ. P. 8 requires a showing, rather than a blanket assertion, of entitlement to relief, and "contemplates the statement of circumstances, occurrences, and events in support of the claim presented and does not authorize a pleader's bare averment that he wants relief and is entitled to it." *Twombly*, 550 U.S. at 555 n.3 (internal citations and quotations omitted). Additionally, the United States Supreme Court did not abolish the Fed. R. Civ. P. 12(b)(6) requirement that "the facts must be taken as true and a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on those merits." *Phillips,* 515 F.3d at 231(*citing Twombly*, 550 U.S. at 553).

Generally, "to the extent that [a] court considers evidence beyond the complaint in deciding a 12(b)(6) motion, it is converted to a motion for summary judgment." *Anjelino v. New York Times Co.,* 200 F.3d 73, 88 (3d Cir. 1999). However, in resolving a 12(b)(6) motion to dismiss, a court may look beyond the complaint to matters of public record, including court files and records, and documents referenced in the complaint or are essential to a plaintiff's claim which are attached to a defendant's motion. *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Under this standard, the Vulcraft "Division Policies" form which Defendant attached to its Brief in Support of Motion to Dismiss, may be considered by the court without converting the motion to dismiss into a motion for summary judgment. *See Pension Ben. Guar. Corp.*, 998 F.2d at 1196-97.

**Discussion**

*A.  The Complaint Does Not Overcome The "Employment At Will" Presumption, As Plaintiff Fails To Allege the Existence Of Either An Express or Implied Contract.*

The Complaint alleges that Vulcraft breached its employment contract when the company failed to administer a second drug test before it terminated Plaintiff's employment. The fundamental flaw with the Complaint, however, is that is does not provide sufficient factual support to establish that an employment contract ever existed between Watson and Vulcraft that would overcome the "Employment at Will" presumption.

In Pennsylvania, courts have long recognized the "Employment at Will" doctrine, which provides that, absent a clear intent by the parties to the contrary, an employee can be discharged for any or no reason. *See Brown v. Hammond*, 810 F. Supp. 644 (E.D. Pa. 1993) (citing *Ruzicki v. Catholic Cemeteries, Inc.*, 610 A.2d 495, 497 (Pa. Super. 1992)). The most clear exception to this concept applies when an "employee and employer enter into a valid contract which expresses an intention to overcome this presumption." *Nix v. Temple Univ. of Com. Sys. of Higher Educ.*, 596 A.2d 1132, 1135 (Pa. Super. 1991) *(citing Veno v. Meredith*, 515 A.2d 571, 576 (Pa. Super. 1986)). Pennsylvania courts have further specified that such express agreements must be both clear and definite, and "where the language is ambiguous or where there is not a definite contractual agreement, such language and agreements will be strictly reviewed because of the pervasive presumption that the employment is at will." *Id.* (internal citations omitted). For instance, a claim for a breach of employment contract will not survive if it does not assert that the "contract for employment contained either an express or implied provision that the employment would be for a specific term," as such typically suggests that the employment was

terminable at the option of either party. *Bruffett v. Warner Communications, Inc.*, 692 F.2d 910, 913 (3d Cir. 1982) (applying Pennsylvania law).

A plaintiff may also overcome the presumption by an "implied in fact contract," which exists if there is additional consideration that would suggest that the parties did not intend to establish an at will employment relationship. *See Dugan v. Bell Tel. of Pennsylvania*, 876 F. Supp. 713, 726 (W.D. Pa. 1994) (finding that an employer's promise not to retaliate against employees did not form an implied contract, as the employee provided no additional consideration to employer besides employment services.) Pennsylvania case law provides that the type of additional consideration necessary to establish an "implied in fact contract" exists when an employee provides his employer "a benefit other than the services which the employee is hired to perform, or when the employee undergoes a substantial hardship other than the services which he is hired to perform." *Id.* (*citing Scott v. Extracorporeal, Inc.*, 545 A.2d 334, 337 (Pa. Super. 1988)).

Other than the bald assertions that he "anticipated being with the company on a long term basis" and "received positive reviews," Plaintiff does not allege an express contract between the parties, which would augment his status beyond "Employment at Will." *Id*. at ¶ 13. While the Complaint states that Watson was employed by Vulcraft for over two years, earning $21.50 per hour, it is void of any factual matter from which the Court could find that Plaintiff's employment was pursuant to a clear and definite contract, and that the term of employment was for a definite period of time. *Id.* at ¶¶ 4, 12. Likewise, the Complaint also fails to allege any form of additional consideration necessary to create an implied in fact contract.

While Plaintiff concedes the long established doctrine of "Employment at Will" within Pennsylvania, he argues that based on *Greene v. Oliver*, 526 A.2d 1192, 1193 (Pa. Super. 1988) the doctrine creates a rebuttable presumption under the law. Br. In Opp'n at 4. The Court finds, however, that Watson's reliance on *Greene* is misplaced, as the plaintiff in that case crossed the legal hurdle and established the existence of an employment contract within his claim. *Id.* In *Greene,* the plaintiff had established the existence of an agreement between himself and his original employers that he would receive lifetime employment, and brought suit after he was laid off by new management, who he claimed had agreed to honor the previous existing contract. *See Id.* Essentially, the case hinged on the enforceability of a lifetime employment contract and the plaintiff's alleged additional consideration, as he had asserted that he worked at a pay rate below union scale in exchange for the promise. *See Id.* On appeal, the Pennsylvania Superior Court held that the trial court had erred in granting summary judgment in favor of the defendant/employer because a question of fact existed as to the intent of the parties and surrounding circumstances of the lifetime employment agreement. *See Id.* at 1202. In sum, the Court finds and rules that the factual scenario of *Greene* greatly differs from the instant case, as Watson has provided no indication of any agreement for employment, lifetime or otherwise, between himself and Vulcraft.

For these reasons, the Court finds and rules that the Complaint does not contain sufficient factual material to establish the existence of an employment contract which would alter the Plaintiff's status as an employee at will.

*B. Watson's Allegations Of "Custom" and "Understanding" With Regard To Vulcraft's Drug Testing Policy Are Not Sufficient To Establish A Contract Claim.*

Watson also cannot establish the existence of a contract based on an employee handbook, as the Complaint specifically states that he did not receive a handbook, nor did he receive a written drug testing policy from Vulcraft. *Id.* at ¶¶ 5,6. Yet, even if Plaintiff had received a written document which detailed Vulcraft's drug testing policy, Pennsylvania courts have consistently upheld a stringent standard in construing handbooks, manuals or other communications to be binding contracts. *See Jacques v. Akzo International Salt Inc.*, 619 A.2d 748, 753 (Pa. Super. 1993). Case law provides that a handbook is not enforceable as a contract unless a "reasonable person in the same position as the employee would interpret its provisions as evidencing an intent by the employer to overcome the at-will presumption." *Anderson v. Haverford Coll.*, 851 F. Supp. 179, 181 (E.D. Pa. 1994). Furthermore, courts have held that in order for a claim to survive a motion to dismiss, a plaintiff must "identify the specific provision in the manual which they allege the defendants to have breached." *Sweeney v. St. Joseph's Hosp.,* 769 F. Supp. 747, 751 (M.D. Pa. 1991) *aff'd,* 980 F.2d 724 (3d Cir. 1992).

Here, Watson merely alleges that it was the "custom" of Vulcraft to administer a second drug test and that it was his "understanding" that termination would only occur when the detected substances were unlawful. Plaintiff further contends that his positive results "must have been from the amphetamine [Adderall] which is a lawful substance." *Id.* at ¶¶ 7, 9. In view of the strict criteria Pennsylvania courts hold in recognizing a contract claim on the basis of a handbook, this Court finds that Watson's assertions of "custom" and "understanding" clearly do

not rise to the level of creating a contract which overcomes the presumption of the "Employee at Will" presumption.

C. *A Public Policy Argument Is Not Available In A Breach Of Contract Case.*

Last, Plaintiff seems to argue that his termination was contrary to public policy because his ADHD medication, a lawful substance, must have caused the positive drug test results. Br. In Opp'n. at 5. However, a public policy argument is not available in a breach of contract case.

The Supreme Court of Pennsylvania recognized a public policy exception to the "Employment at Will" presumption in *Geary v. United States Steel Corp.,* where it stated:

> It may be granted that there are areas of an employee's life in which his employer has no legitimate interest. An intrusion into one of these areas by virtue of the employer' power of discharge might plausibly give rise to a cause of action, particularly where some recognized facet of public policy is threatened.

319 A.2d 174, 184 (Pa. 1974). Since *Geary,* Pennsylvania courts have continued to hold that a cause of action exists for **wrongful discharge** when the termination of an employee violates a clearly mandated public policy. *Dugan*, 876 F. Supp. at 716. Typically, a court determines whether the actions of an employer have violated public policy on a case-by-case basis. *See Clark v Modern Group, Ltd*., 9 F.3d 321, 330-331 (3d. Cir. 1993) (holding that the termination of am employee pursuant to her refusal to engage in illegal conduct violates clearly mandated public policy); *see also Reuther v. Fowler & Williams, Inc.,* 386 A.2d 119 (Pa. Super 1978). (finding that an employer could not terminate an employee for missing work because of jury duty, as jury service is a recognized facet of public policy).

In the area of drug and alcohol testing, the Court of Appeals for the Third Circuit has provided some guidance when it vacated a lower court's dismissal of a wrongful discharge claim

brought after the employee was fired for refusing to consent to a urinalysis test. *See Borse v. Piece Goods Shop*, Inc., 963 F.2d 611, 626 (3d Cir. 1992) (applying Pennsylvania law); *see also Hershberger v. Jersey Shore Steel Co.,* 575 A.2d 944, 947 (1990) ("there is no clear mandate in the form of public policy allowing for the existence of a cause of action for wrongful discharge founded upon the use of a drug screening test, the results of which are not confirmed by an alternative scientific procedure.") In *Borse*, the appellate court determined that the employee's dismissal **may** violate public policy, but only if the employee could prove that the testing violated public policy protecting individuals from tortuous invasions of privacy by private actors. *Id.*

Assuming arguendo, that Plaintiff had asserted a wrongful discharge claim, his public policy argument still would likely fail. The factual situation in this case differs significantly from that of *Borse*, as Watson had agreed to drug testing, pursuant to signing Vulcraft's "Division Policies" form, where Borse did not consent. Complaint, Exhibit C.

**Conclusion**

After viewing the facts in the light most favorable to Plaintiff, the Court concludes that Defendant's Motion to Dismiss must be granted and Plaintiff's Complaint dismissed with prejudice in its entirety.

An appropriate Order follows.

McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT S. WATSON, | ) |
| Plaintiff, | ) 2: 12-cv-00076 |
| v. | ) |
| VULCRAFT SALES CORPORATION, | ) |
| Defendant. | ) |

## ORDER OF COURT

**AND NOW**, this 2nd day of July, 2012, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED AND DECREED** that the MOTION TO DISMISS filed by Vulcraft is **GRANTED** and Plaintiff's Complaint is dismissed with prejudice in its entirety. The Clerk of Court is **DIRECTED** to docket this case closed.

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge

cc: James R. Jefferies, Esquire

John J. Myers, Esquire
Eckert Seamans Cherin & Mellott, LLC